UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| RESHAUD TODD BROWN, | | |
| | Petitioner, | Case No. C19-1977-JCC-MLP |
| v. | | |
| | | REPORT AND RECOMMENDATION |
| JERI BOE, | | |
| | Respondent. | |

**I.     INTRODUCTION AND SUMMARY CONCLUSION**

Petitioner Reshaud Brown is a state prisoner who is currently confined at the Clallam Bay Corrections Center in Clallam Bay, Washington. He seeks relief under 28 U.S.C. § 2254 from a 2017 King County Superior Court judgment and sentence. (Dkt. # 7.) Respondent has filed an answer responding to Petitioner's federal habeas claims and has submitted relevant portions of the state court record. (Dkt. ## 10, 11.) Petitioner has filed a response to Respondent's answer.[1] (Dkt. # 15.) This Court, having carefully reviewed Petitioner's petition for writ of habeas corpus, all briefing of the parties, the trial transcript, and the balance of the record, concludes that

---

[1] Petitioner included with his response a motion to file an overlength brief. (*See* Dkt. # 15 at 17.) However, Petitioner's response was not, in fact, overlength and his motion is therefore moot.

REPORT AND RECOMMENDATION
PAGE - 1

Petitioner's federal habeas petition should be denied and this action should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's convictions as follows:

> On September 21, 2015, the Kent Police Department (KPD) responded to a call about sounds of a domestic struggle in one of the rooms of a Howard Johnson motel. Throughout the night before, a couple in the neighboring unit heard loud noises, crying, and a female voice saying "No, no." The couple reported the noises to the hotel clerk who called the police.
>
> When they arrived, KPD officers heard a male voice followed by a frantic female voice saying, "He's killing me. Help me." KPD had obtained a key but kicked the door open because the woman continued to scream for help. Upon entering the hotel room, KPD found Brown standing just inside the door with his girlfriend, Natalie Gumtow, seated in a chair to the right.
>
> KPD officers found Gumtow "extremely frantic." KPD detained Brown and took a statement from Gumtow. KPD observed marks on Gumtow's neck and minor scrapes on her arm, legs, and face. Gumtow told KPD Brown had strangled her with the cord of a Roto Hammer,[2] which they found between the bed and bathroom of the motel room. Gumtow also reported Brown had told her the tool was a nail gun and threatened to shoot her with it.
>
> An EMT at the scene evaluated Gumtow and noted red marks on her neck and leg. Gumtow told the EMT she had been hit and choked. After transfer to the emergency room, the evaluating physician noted, "[t]he patient states that she was in a hotel with her boyfriend and he choked her with his hands, and also wrapped a cord around her neck and was strangling her."
>
> KPD arrested Brown and took him into custody. The State charged Brown with assault in the second degree by strangulation and felony harassment, both with domestic violence allegations.[3]

---

[2] [Court of Appeals' footnote 1] A Roto Hammer is a tool for drilling concrete.

[3] [Court of Appeals' footnote 2] The State amended the information several times to include a charge of tampering with a witness, and multiple charges of domestic violence felony violation of a court order. None of these additional charges are at issue on appeal.

REPORT AND RECOMMENDATION
PAGE - 2

At trial, Gumtow told a very different version of the events: She testified she left the hotel to visit her ex-pimp, Mikey, at his apartment to obtain methamphetamines. Gumtow and Mikey smoked together and Mikey became upset and began beating her. He wrapped a cord around her neck. Gumtow thought she blacked out for a few seconds. She eventually left Mikey's apartment and returned to the Howard Johnson motel. When Gumtow arrived back at the motel, she told Brown about the incident with Mikey. Brown became angry and told Gumtow he would leave her for someone else. Gumtow and Brown argued. Gumtow became upset and began throwing things, including Brown's shoes.

Throughout this testimony, the State confronted Gumtow with her prior statements to police that Brown choked her at least four times that night and threatened to shoot her with a nail gun, chop her up, or stab her. Gumtow admitted she told police Brown assaulted her, but denied any memory of Brown choking her. She also denied Brown threatened her. She testified Brown never "put hands" on her. According to Gumtow, she told the police Brown choked her because she was upset and did not want Brown to leave her. Gumtow denied any wrongdoing by Brown.

Toward the end of trial, Brown requested an instruction for third degree assault. Brown raised the issue as a request for a lesser included offense instruction. The trial court refused to give the instruction for third degree assault as a lesser included offense because second and third degree assault required different elements. Instead the trial court issued a jury instruction on fourth degree assault as a lesser degree offense:

> The defendant is charged in Count 1 with assault in the second degree. If, after full and careful deliberation on this charge, you are not satisfied beyond a reasonable doubt that the defendant is guilty, then you will consider whether the defendant is guilty of the lesser crime of assault in the fourth degree.
>
> When a crime has been proved against a person, and there exists a reasonable doubt as to which of two or more degrees that person is guilty, he or she shall be convicted only of the lowest degree crime.

The jury convicted Brown of second degree assault, harassment, tampering with a witness, and seven counts of violation of a court order. The jury also found the existence of a domestic relationship between Brown and Gumtow at the time of commission of all crimes.

Due to prior offenses of first degree burglary and first degree robbery, Brown's second degree assault conviction constituted his third "most serious offense" under the POAA. Brown requested the trial court exercise discretion at

REPORT AND RECOMMENDATION
PAGE - 3

sentencing and not impose the life sentence required by the POAA. The trial court did not believe it had discretion to deviate from the POAA in this case and sentenced Brown to life without the possibility of early relief [sic].

(Dkt. # 11, Ex. 14 at 2-5.)

### III.     PROCEDURAL BACKGROUND

Petitioner appealed his second-degree assault conviction and his mandatory life sentence to the Washington Court of Appeals, arguing that: (1) the trial court erred in failing to instruct the jury on third-degree assault as a lesser offense to second-degree assault, (2) defense counsel provided ineffective assistance of counsel in failing to request an instruction on third-degree assault as an inferior degree offense to second-degree assault, (3) the trial court erred by failing to recognize it had discretion not to impose a sentence of life without the possibility of parole, (4) the mandatory sentence of life without the possibility of release constitutes cruel and unusual punishment in violation of the Eighth Amendment and the Washington Constitution. (*Id*., Ex. 11 at 12.) On October 15, 2018, the Court of Appeals issued an unpublished opinion affirming Petitioner's conviction and sentence. (*See id*., Ex. 14.)

Petitioner next sought discretionary review in the Washington Supreme Court. (*Id*., Ex. 15.) He identified the following three issues in his petition for review.

>    1.     Under the factual prong of the test for lesser offense instruction, whether the jury is permitted to partially credit a witness's testimony and rely on affirmative evidence from other sources to rationally find that only the lesser offense was committed?
>
>    2.     Whether defense counsel was ineffective in failing to use the correct legal term for inferior degree offenses in requesting instruction on third degree assault?
>
>    3.     Whether the court has discretion to impose an exceptional sentence downward based on youthful characteristics of a young adult, and whether imposition of a life sentence without consideration of those characteristics constitutes cruel and unusual punishment?

REPORT AND RECOMMENDATION
PAGE - 4

(*Id*., Ex. 15 at 1.) The Supreme Court denied Petitioner's petition for review without comment on February 6, 2019, and the Court of Appeals issued its mandate terminating direct review on May 10, 2019. (*Id*., Exs. 16, 19.) Petitioner now seeks federal habeas review of his second-degree assault conviction.

## IV.     GROUNDS FOR RELIEF

Petitioner identifies the following four grounds for relief in his federal habeas petition:

1. The trial court unreasonably violated due process in failing to instruct the jury on third-degree assault as a lesser offense of second-degree assault.

2. The Court of Appeals unreasonably found that the factual prong of the test for an inferior third-degree assault instruction was not met by the evidence.

3. Defense counsel was ineffective in failing to request a third-degree assault instruction as an inferior degree offense to second-degree assault.

4. The Court of Appeals unreasonably conflated the sufficiency of the evidence standard with the *Strickland* prejudice test in its opinion rejecting Petitioner's ineffective assistance of counsel claim.

(Dkt. # 7 at 5, 7, 8, 10.)

## V.     DISCUSSION

Respondent concedes that Petitioner fairly presented his claims to the Washington Supreme Court in his petition for review on direct appeal and that he has therefore exhausted his state remedies in accordance with 28 U.S.C. § 2254(b). (Dkt. # 10 at 5.) Respondent argues, however, that Petitioner is not entitled to relief with respect to any of the claims asserted in his federal habeas petition. (*See id*. at 9-27.)

### A.     Standard of Review

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus

REPORT AND RECOMMENDATION
PAGE - 5

petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

REPORT AND RECOMMENDATION
PAGE - 6

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.      Analysis**

*1.      Entitlement to Third-Degree Assault Instruction (Grounds 1 and 2)*

Petitioner's first and second grounds for relief are interrelated. Petitioner asserts in his first ground for relief that the trial court violated his due process rights by failing to instruct the jury on the offense of third-degree assault as a lesser offense of second-degree assault. (Dkt. # 7 at 5.) He argues in his second ground for relief that the Washington Court of Appeals unreasonably rejected his challenge to the trial court's failure to give the third-degree assault instruction when the Court of Appeals determined that the factual prong of the test for giving an inferior degree instruction was not satisfied by the evidence at trial. (*Id*. at 7.)

Claims of error concerning state jury instructions are generally matters of state law that are not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). An alleged error in a state court's determination of whether state law allowed for a particular instruction cannot form a basis for federal habeas relief. *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (citing *Estelle*, 502 U.S. at 67-68). Likewise, the failure to give an instruction which might be proper as a matter of state law does not, by itself, merit federal habeas relief. *Id*.

Federal habeas relief is available only when the petitioner demonstrates that the instructional error "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Where the challenge is to the failure to give an instruction, the petitioner's burden is "especially heavy" because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The Court of Appeals rejected Petitioner's claim of instructional error on direct appeal:

> Brown claims the jury should have received an inferior degree offense instruction for assault in the third degree. The State argues the trial court properly refused the instruction because the evidence did not show Brown negligently assaulted Gumtow. We agree the evidence failed to establish only third degree assault and conclude the trial court properly denied the third degree assault instruction.
>
> "Generally, a criminal defendant may only be convicted of crimes charged in the State's information." State v. Corey, 181 Wn. App. 272, 275, 325 P.3d 250 (2014). But, a jury may find a defendant guilty of a crime that is an inferior degree to the crime charged. RCW 10.61.003; State v. Fernandez-Medina, 141 Wn.2d 448, 453, 6 P.3d 1150 (2000). A trial court may instruct the jury on an inferior degree offense only when:
>
>> (1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense.
>
> Fernandez-Medina, 141 Wn.2d at 454 (quoting State v. Peterson, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)).
>
> Based on Brown's request, the trial court considered whether to give a third degree assault jury instruction as a lesser included offense rather than an inferior degree offense. The legal standard for entitlement to a lesser included offense differs from that of an inferior degree offense. Fernandez-Medina, 141 Wn.2d at 454. But in this case, any confusion means little because the parties do not dispute the legal component of the test for entitlement to an inferior offense

REPORT AND RECOMMENDATION
PAGE - 8

instruction. See Fernandez-Medina, 141 Wn.2d at 454-55. On appeal the parties only dispute the factual element of the test.

Whether to instruct a jury on an inferior degree offense requires the application of law to facts and is reviewed de novo. Corey, 181 Wn. App. at 276. We view the supporting evidence in the light most favorable to the party who requested the instruction. Fernandez-Medina, 141 Wn.2d at 455-56. The supporting evidence must affirmatively establish the defendant's theory of the case. Fernandez-Medina, 141 Wn.2d at 456.

A defendant must make a "more particularized" factual showing for an inferior degree offense instruction than for other jury instructions. Fernandez-Medina, 141 Wn.2d at 455. The evidence must raise an inference that *only* the inferior degree offense was committed. Fernandez-Median, 141 Wn.2d at 455. "[W]hen substantial evidence in the record supports a rational inference that the defendant committed only the lesser included or inferior degree offense to the exclusion of the greater offense, the factual component of the test for entitlement to an inferior degree offense instruction is satisfied." Fernandez-Medina, 141 Wn.2d at 461. The inference does not arise merely because the jury does not believe the State's evidence. State v. McClam, 69 Wn. App. 885, 888, 850 P.2d 1377 (1993) (citing State v. Speece, 115 Wn.2d 360, 362, 798 P.2d 294 (1990)). "[S]ome evidence must be presented which affirmatively establishes the defendant's theory." State v. Fowler, 114 Wn.2d 59, 67-68, 785 P.2d 808 (1990), overruled on other grounds by State v. Blair, 117 Wn.2d 479, 816 P.2d 718 (1991).

The State argued Brown committed assault in the second degree by strangulation. A defendant is guilty of this category of assault in the second degree if, "under circumstances not amounting to assault in the first degree," he or she "assaults another by strangulation or suffocation." RCW 9A.36.021(1)(g). Brown requested an instruction for assault in the third degree with substantial pain. Under the proposed instruction, a person commits assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree, "with criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering." RCW 9A.36.031(1)(f). To be entitled to an inferior degree offense instruction on this type of third degree assault, the evidence must affirmatively establish Brown did not strangle Gumtow but caused her bodily harm resulting in substantial pain.

In this case, the State provided evidence from witnesses who testified Gumtow reported Brown strangled her. On direct examination, Gumtow denied Brown had strangled her, attributing the strangulation to Mikey instead. The State repeatedly countered Gumtow's testimony with reference to her prior statements that Brown strangled her, but Gumtow continued to deny the events and claimed

REPORT AND RECOMMENDATION
PAGE - 9

> she made the statements because Brown upset her when he threatened to leave her.
>
> If believed by the jury, this testimony created the inference that Brown did not commit assault in the second degree by strangulation. In fact, based on Gumtow's testimony, Mikey caused Gumtow's injuries and Brown did not "put hands" on her. Rather than establish Brown inflicted bodily harm and substantial pain as required for third degree assault, this affirmative evidence suggests Brown never assaulted Gumtow. Therefore, the evidence does not show Brown committed only the inferior degree offense of third degree assault to the exclusion of the greater offense of second degree assault.
>
> The conclusion Brown committed third degree assault required the jury to selectively disbelieve parts of Gumtow's prior statements and her testimony. Disbelief of evidence of guilt does not satisfy the factual element of the test for an inferior degree instruction. <u>Fernandez-Medina</u>, 141 Wn.2d at 456. Brown was not entitled to an instruction for third degree assault.[4]

(Dkt. # 11, Ex. 14 at 5-8.)

Petitioner argues that the Court of Appeals unreasonably concluded that the factual prong of the test for an inferior third degree assault instruction was not met by the evidence, and he points to various pieces of evidence in the record that he believes were sufficient to establish that he caused the victim, Ms. Gumtow, bodily harm resulting in pain, but that he did not strangle her. (Dkt. # 7 at 7.) In particular, Petitioner cites to the following evidence: (a) Ms. Gumtow's testimony that Petitioner did not strangle her; (b) the testimony of guests in an adjacent hotel room that it sounded like someone was being beaten in the room next door; (c) Ms. Gumtow's testimony that Petitioner was the only one in the hotel room with her; (d) testimony of medical personnel that Ms. Gumtow had reported being beaten and in considerable pain; and (e) police

---

[4] [Court of Appeals' footnote 3] The State argues third degree assault is inapplicable due to the required element of "criminal negligence." According to the State, the evidence shows the strangulation was intentional. Brown correctly argues the issue of criminal negligence is immaterial in this case. Under RCW 9A.08.010(2), "[w]hen a statute provides that criminal negligence suffices to establish an element of an offense, such element also is established if a person acts intentionally, knowingly, or recklessly." Therefore, evidence Brown intentionally strangled Gumtow satisfies the criminal negligence component.

REPORT AND RECOMMENDATION
PAGE - 10

photographs that showed Ms. Gumtow's injuries. (*See id*.; *see also*, Dkt. # 15 at 7-8.) Petitioner's argument to the contrary, none of the independent pieces of evidence cited in his materials undermine the Court of Appeals' conclusion that the evidence did not show Petitioner committed *only* the inferior degree offense of third-degree assault to the exclusion of the greater offense of second-degree assault.

Because Petitioner has not established that the Washington Court of Appeals' decision was based on an unreasonable determination of the facts, and because the Court of Appeals concluded that, under state law, Petitioner was not entitled to a third-degree assault instruction given the specific facts of his case, Petitioner's challenge to the trial court's refusal to give the instruction provides no basis for federal habeas relief. Accordingly, Petitioner's federal habeas petition should be denied with respect to his first and second grounds for relief.

### 2. *Ineffective Assistance of Counsel (Grounds 3 and 4)*

Petitioner's third and fourth grounds for relief are also interrelated. Petitioner asserts in his third ground for relief that his trial counsel was ineffective for requesting a third-degree assault instruction as a "lesser included" offense to second-degree assault instead of as an "inferior degree" offense. (Dkt. # 7 at 8.) Petitioner maintains that while counsel's proposed third-degree assault instruction did not meet the legal prong of the test for determining whether a "lesser included" offense instruction was warranted, it did meet the legal prong for determining whether an "inferior degree" instruction was warranted. (*Id*.) In his fourth ground for relief, Petitioner argues that the Washington Court of Appeals unreasonably applied the *Strickland* prejudice standard in rejecting his ineffective assistance of counsel claim. (*Id*. at 10.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-

REPORT AND RECOMMENDATION
PAGE - 11

assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard

REPORT AND RECOMMENDATION
PAGE - 12

was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

The Washington Court of Appeals, in analyzing Petitioner's ineffective assistance of counsel claim on direct appeal, did not address the deficient performance prong of the *Strickland* standard, apparently because Washington Supreme Court precedent foreclosed any finding that Petitioner was prejudiced as a result of counsel's alleged failure to propose, and argue for, the third-degree assault instruction under the proper standard. (*See* Dkt. # 11, Ex. 14 at 8-9.) The Court of Appeals explained its conclusion as follows:

> Counsel's failure to request a lesser offense instruction does not establish prejudice, as required for ineffective assistance of counsel, where a jury has convicted the defendant of the higher offense. Grier, 171 Wn.2d at 43-44; In re Personal Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). Because courts presume a jury acts according to the law, courts must assume the jury would not have convicted the defendant of the higher degree offense unless the State had met is burden of proof. Grier, 171 Wn.2d at 43-44; Crace, 174 Wn.2d at 847.
>
> Here, the jury convicted Brown of second degree assault by strangulation. Without evidence to the contrary, the presumption holds the jury arrived at this verdict because the State proved beyond a reasonable doubt that Brown committed assault by strangulation. As a result, the availability of a compromise verdict would not have changed the outcome of the trial. Grier, 171 Wn.2d at 44; Crace, 174 Wn.2d at 847. Brown, therefore, cannot demonstrate prejudice from trial counsel's failure to properly request an inferior degree offense instruction.

(*Id*., Ex. 14 at 10.)

Petitioner argues that the Court of Appeals unreasonably applied the *Strickland* prejudice standard in rejecting his ineffective assistance of counsel claim, and he relies on the Ninth Circuit's decision in *Crace v. Herzog*, 798 F.3d 840 (9th Cir. 2015), to support his argument. (*See* Dkt. # 7 at 10; Dkt. # 15 at 16.) The Ninth Circuit, in *Crace*, rejected the Washington

REPORT AND RECOMMENDATION
PAGE - 13

Supreme Court's methodology in applying the *Strickland* standard to a claim of ineffective assistance of counsel arising out of trial counsel's failure to request a lesser included offense instruction to which the petitioner would have been entitled under Washington law had counsel made such a request.[5]

The Washington Supreme Court, in analyzing whether Crace was prejudiced by his counsel's failure to request a lesser included offense instruction, explained that when reviewing a claim of ineffective assistance of counsel it was required to "assume that the jury would not have convicted the defendant unless the State had met its burden of proof" and that "the availability of a compromise verdict would not have changed the outcome of the trial." *In re Crace*, 174 Wn.2d at 847. The court concluded that, in light of these presumptions, Crace could not satisfy the *Strickland* prejudice standard. On federal habeas review, the district court granted Crace's petition for writ of habeas corpus, concluding that the Washington Supreme Court's prejudice analysis involved an "incomplete and unreasonable application of *Strickland*." *Crace*, 798 F.3d at 845.

The Ninth Circuit affirmed the district court's decision, concluding that the Washington Supreme Court's *methodology* as employed in Craces's case, and in the case upon which it relied, *State v. Grier*, 171 Wn.2d 17 (2011), constituted "a patently unreasonable application of *Strickland*." *Id*. at 847. The Ninth Circuit explained that the Washington Supreme Court "was wrong to assume that, because there was sufficient evidence to support the original verdict, the jury *necessarily* would have reached the same verdict even if instructed on an additional lesser

---

[5] The Washington Supreme Court decision under review in *Crace v. Herzog* was that issued in *In re Personal Restraint of Crace*, 174 Wn. 2d 835 (2012), one of the cases relied upon by the Washington Court of Appeals in rejecting Petitioner's claim of prejudice.

REPORT AND RECOMMENDATION
PAGE - 14

included offense." *Id*. at 847-48 (emphasis in original). The Court further explained that "*Strickland requires* a reviewing court to assess the likelihood that the defendant's jury would have convicted only on the lesser included offense." *Id*. at 849 (emphasis in original). The Ninth Circuit went on to observe that the Washington Supreme Court "in essence converted *Strickland's* prejudice inquiry into a sufficiency-of-the-evidence question—an entirely different inquiry separately prescribed by *Jackson v. Virginia*[.]" *Id*.

Respondent argues that the Ninth Circuit's decision in *Crace v. Herzog* does not govern in Petitioner's case, arguing that *Strickland* is the relevant clearly established federal law for purposes of 28 U.S.C. § 2254(d) and that Petitioner's criticism of the Court of Appeals' decision for its reliance on Washington Supreme Court precedent that was heavily criticized by the Ninth Circuit fails to afford the decision the deference required by § 2254(d). (Dkt. # 10 at 22-23.) Respondent goes on to distinguish the facts of *Crace* from the facts of this case, noting that in *Crace* the reviewing courts agreed that Crace's counsel was ineffective for failing to request a lesser-included-offense instruction to which Crace was legally and factually entitled under state law whereas here, the Washington Court of Appeals specifically held that Petitioner was not entitled to the requested lesser offense instruction. (*Id*. at 23.)

While Respondent is correct that the facts of the two cases differ somewhat, this Court is reluctant to accept Respondent's argument that the Court of Appeals' opinion at issue here is entitled to deference with respect to its prejudice analysis given that the court employed effectively the same methodology as was employed by the Washington Supreme Court in *Crace*, a methodology which, as noted above, the Ninth Circuit concluded constituted "a patently unreasonable application of *Strickland*." *Crace*, 798 F.3d at 847.

REPORT AND RECOMMENDATION
PAGE - 15

However, even if, as it appears, the Court of Appeals' decision is not entitled to deference under § 2254(d), Petitioner's ineffective assistance of counsel claim nonetheless fails under a *de novo* standard of review. Prior to addressing Petitioner's ineffective assistance of counsel claim on direct appeal, the Court of Appeals concluded that Petitioner was not entitled to a lesser degree instruction. While Petitioner's counsel requested, and was denied, a third-degree assault instruction under the legal prong of Washington's lesser-included-offense standard, the Court of Appeals made clear that this made no practical difference in the context of Petitioner's case because the parties on appeal did not dispute the legal component of the test for entitlement to an inferior degree offense instruction, they disputed only the factual element of the test. And, the court concluded, under the factual element, state law precluded the giving of such an instruction. As Petitioner was not entitled to the proposed instruction under either the "lesser included" standard or the "inferior degree" standard, it cannot be said that Petitioner was prejudiced by his trial counsel's failure to request, and argue for, the instruction under the proper legal standard. Petitioner's federal habeas petition must therefore be denied with respect to his third and fourth grounds for federal habeas relief.

### C.     Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

REPORT AND RECOMMENDATION
PAGE - 16

U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.

### VI.   CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

### VII.   OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 6, 2020**.

DATED this 14th day of October, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 17